IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD ROBINSON (K-88722), ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12 C 6609 |
| ) | |
| ED SWEENY, et al. ) | Judge Joan H. Lefkow |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Ronald Robinson ("Plaintiff"), an Illinois inmate currently confined at Pontiac Correctional Center, brought this 42 U.S.C. § 1983 action against Cook County Sheriff Tom Dart, Cook County Jail Deputy Sheriffs Ed Sweeny and Juanita Essex, Jail Superintendent Victor Thomas, and First Assistant Executive Director Daniel Moreci ("Defendants"). Plaintiff alleges that the Defendants acted with deliberate indifference to his safety. More specifically, he states that he was housed in protective custody during his jail confinement in 2011, yet was transported to and from court with general population inmates. On August 25, 2011, after riding an elevator at the Markham courthouse with general population inmates, an inmate named Barnes (Plaintiff's co-defendant in his criminal case) struck Plaintiff on his face. During another trip to the Markham courthouse on September 29, 2011, general population inmates allegedly spat on, verbally harassed, and kicked Plaintiff during the bus ride to court. Currently pending before this court is Defendants' motion for summary judgment [Doc. 35], to which Plaintiff has responded. For the reasons stated herein, the court grants the motion.

## STANDARD OF REVIEW

**Federal Rule of Civil Procedure 56**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). When addressing a motion for summary judgment, this court construes the facts and makes all reasonable inferences in favor of the non-movant. *Jajeh*, 678 F.3d at 566. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence "to permit a jury to return a verdict for" the nonmoving party. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010).

**Local Rule 56.1 (N.D. Ill.)**

The facts of this case are taken from Defendants' N.D. Ill. Local Rule 56.1 Statement. A district court is entitled to decide a summary judgment motion based on the factual record presented in the parties' Local Rule 56.1 Statements. *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004); *see also Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings"). Plaintiff's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("even pro se litigants must follow rules of civil procedure"); *see also Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011).

Consistent with the local rules, Defendants filed a Local Rule 56.1(a)(3) Statement of Material Facts along with their summary judgment motion. Doc. 37. Each substantive factual assertion in their Local Rule 56.1(a)(3) Statement cites evidentiary material in the record and is supported by the cited material in accordance with N.D. Ill. L.R. 56.1(a). Also consistent with the local rules, Defendants filed and served on Plaintiff a Local Rule 56.2 Notice, which explains in detail the requirements of Local Rule 56.1 and how to respond to a Rule 56.1 Statement. Doc. 38.

Plaintiff responded to Defendants' summary judgment materials by challenging a few of Defendants' contentions; however, Plaintiff filed neither responses to Defendants' Rule 56.1(a)(3) Statement in accordance with Local Rule 56.1(b)(3) (B) nor a statement of additional facts pursuant to Local Rule 56.1(b)(3)(C). *See* Doc. 43. After Plaintiff responded to the summary judgment motion, the court informed him that, due to his purported limited use of his prison's library, he could supplement his response. Doc. 46. Plaintiff has not done so. Plaintiff not having responded to Defendants' Local Rule 56.1(a)(3) Statement, the factual assertions therein are deemed admitted and constitute the factual record on which the summary judgment motion will be resolved. *See* N.D. Ill. L.R. 56. 1 (b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Schrott v. Bristol–Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); *Smith v. Lamz*, 321 F.3d 680, 682–83 (7th Cir. 2003). With the above standards in mind, the facts of this case are as follows.

**FACTS**

At all times pertinent to this case, Plaintiff was a pretrial detainee at the Cook County Jail. Doc. 37 ¶ 1. Defendants Essex and Sweeny were and are deputy sheriffs at the jail. *Id.* at ¶¶ 2-3. Defendants Moreci was the superintendent of Division 9, which houses protective custody inmates. Defendant Thomas is or was the superintendent of Division 9 at the time Plaintiff filed this action. *Id.* at ¶¶ 4-5. Defendant Tom Dart was and is the Cook County Sheriff. *Id.* at ¶ 6.

Plaintiff entered the jail in April of 2011. *Id.* at ¶ 8. On June 22, 2011, he requested to be placed in protective custody and was transferred to Division 9. *Id.* at ¶ 11. He signed a protective custody request form and stated as his reason for his request: "in fear of my life." *Id.* at ¶ 12; *see also* Doc. 43, Exh. B. Plaintiff did not list the names of individuals he feared. Doc. 37, ¶ 16.

On August 25, 2011, Plaintiff had a court appearance at the Markham Courthouse for his criminal case. Doc. 37, ¶ 17. Defendant Essex was assigned to the courtroom for Plaintiff's and co-defendant Barnes' court hearing. She remained in the courtroom when Plaintiff and Barnes were being escorted to a holding cell and was not present when the inmates were being moved. *Id.* at ¶¶ 20, 25; *see also* Doc. 37, Exh. D, ¶¶ 3-6. After the court hearing, Defendant Sweeny escorted Plaintiff down an elevator with three general population inmates. *Id.* at ¶ 19. Plaintiff was handcuffed with his hands in front of him. *Id.* at ¶ 21. The three general population inmates, Barnes being one, were cuffed with their right hands cuffed together. *Id.* at ¶¶ 22, 23. Sweeny stood between Plaintiff and the three general population inmates. *Id.* at ¶ 24. Plaintiff never told the Defendants or any officers at the Cook County Jail that he feared Barnes. *Id.* at ¶¶ 26. Even on August 25, 2013, when Plaintiff was attacked, he never expressed to Officers Essex or Sweeny that he feared an attack by Barnes. *Id.* at ¶¶ 28, 30. At most, Plaintiff told the officers that he did not want to be near general population inmates. Doc. 37-4, Exh. B, Pl's Depo. at 46-47.

When exiting the elevator, Sweeny instructed Plaintiff to exit first. Doc. 37, ¶ 31. The parties' accounts differ slightly as to what happened when everyone exited the elevator. According to Sweeny,

Plaintiff stopped walking and turned to face Barnes after the two inmates had exchanged words. Sweeny allegedly told Plaintiff to stop talking and keep walking. *Id.* at ¶¶ 32, 34. Plaintiff states in his deposition that he does not recall turning to face Barnes. *Id.* at ¶ 33. Just after exiting the elevator, Barnes threw two or three punches at Plaintiff, one striking Plaintiff on the right side of his face. *Id.* at ¶ 35. Plaintiff also states that he was hit on the left side of his face, but he does not recall where. *Id.* at ¶ 41. Sweeny reached through the inmates to separate them. *Id.* at ¶ 36. Sweeny then called for assistance. *Id.* After the incident, Plaintiff was taken by ambulance to Advocate South Suburban Hospital, where he was examined in the emergency room. *Id.* at ¶ 37.

Plaintiff never lost consciousness after being struck. *Id.* at ¶ 38. He described his injuries as nightmares, seeing white flashes, severe headaches, and a knot over his left eye. *Id.* at ¶ 40. According to Physician Assistant Barbara Ann Davies, who examined the hospital records from August 25, 2011, Plaintiff suffered no serious injury. *Id.* at ¶ 46. Prior to the August 25, 2011, incident, Plaintiff complained about a cyst over his left eye, which he had when he entered the jail in April of 2011. *Id.* at ¶¶ 42-44. At the court hearing on August 25, 2011, prior to the incident with Barnes, Plaintif obtained a court order for a medical examination of the growth on his eye. *Id.* at ¶ 18.

Plaintiff filed a grievance about the August 25, 2011. After an investigation, the grievance officer determined that Plaintiff was the aggressor. *Id.* at ¶ 52.

Following the August 25, 2011, incident, Plaintiff complained that he was verbally assaulted, spat upon, and kicked on the bus when being taken to court. Doc. 37, ¶ 54. On September 29, 2011, Judge Zeleniski at the court in Markham issued a High Risk Movement ('HRM") order for Plaintiff. *Id.* at ¶ 48. Plaintiff and Barnes were never transported together after the HRM order. *Id.* at ¶ 57.

Neither Sheriff Dart nor Director Moreci are parties to the grievance process, and Plaintiff has never met them. *Id.* at ¶¶ 50, 62-64. Plaintiff does know if he ever met Superintendent Thomas and does not recall ever communicating with him directly. *Id.* at ¶ 65. According to Thomas, he never communicated with Plaintiff nor received any writings from him. *Id.* at ¶66.

With Plaintiff's response to the summary judgment motion, he submits a copy of Policy No. 1081, which states that protective custody and general population inmates are to be kept apart. Doc. 43, Exh. A. With respect to transporting protective custody inmates, the policy states: "All protective custody detainees shall be transported separate from the general population detainees. Detainees being transported shall be under the direct supervision of escort staff at all times." *Id.* Although the policy states that protective custody and general population inmates should be transported separately, no specific instructions are provided as to how to transport them on a bus or in a courthouse. *Id.*; *see also* Doc. 37 at ¶ 70. Regularly followed procedures with bus transfers are that general population inmates board first and sit in the rear. Protective custody inmates board last and sit in the front and, upon arriving at their destination, these inmates exit the bus first, followed by general population inmates. Doc. 37, ¶ 71. There are always two to three officers on the bus when transporting inmates. *Id.* at ¶ 60.

## **DISCUSSION**

Plaintiff's claims of deliberate indifference to his safety consists of two incidents: the first one occurring on August 25, 2011, when Plaintiff was forced to ride an elevator with general population inmates at the Markham courthouse and was attacked by Barnes shortly after exiting the elevator; the second one occurring on September 29, 2011, when he was forced to ride the bus to the Markham courthouse with general population inmates, including Barnes, and was allegedly spat on, kicked, and verbally harassed. Though not addressed by the parties in their summary judgment materials, the court notes that Plaintiff's complaint indicates that, after September 29, 2011, he may have ridden a bus again with general population inmates and again was spat on and verbally harassed. *See* Compl. at 5; Doc. 37, Exh. B at 70 (Plaintiff states in his deposition that he rode a bus with general population inmates after September 29, 2011, and that he was spat upon and verbally harassed but not kicked). Defendants Essex and Sweeny are alleged to have acted with deliberate indifference with respect to August 25, 2011, incident. Moreci, the former superintendent of Division, allegedly acted with deliberate

indifference to the September 29, 2011, bus incident and similar bus incidents while he was superintendent. Thomas allegedly acted with deliberate with respect to bus incidents that occurred while he was superintendent of Division 9. As to Sheriff Dart, Plaintiff alleges that he is responsible for allowing protective custody inmates be transferred with general population inmates. The summary judgment evidence demonstrates that Plaintiff cannot establish deliberate indifference for any of these claims.

Jail officers have a duty to protect detainees from violence at the hand of other inmates. Liability based upon a breach of such a duty, however, exists only if (1) the inmate faced a substantial risk of serious harm and (2) the officer deliberately disregarded that risk. *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)); *Santiag ov. Walls*, 599 F.3d 749, 758 (7th Cir. 2010). The first prong is an objective one, and the risk of harm must have been objectively serious. The second prong is subjective, such that the inmate must be able to prove that the officer both knew the inmate faced a "substantial risk of serious harm" and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Grieveson*, 538 F.3d at 777, quoting *Farmer*, 511 U.S. at 847. Deliberate indifference "requires a showing of more than mere or gross negligence." *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). To rise to the level of deliberate indifference, the officers "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [] must also draw the inference." *Farmer*, 511 U.S. at 837.

As to the August 25, 2011, incident, the Defendants contend that Plaintiff's injuries were too minor to established that Plaintiff faced an objectively serious risk of harm. Although Plaintiff's injuries from the August 25, 2011, attack were not substantial (he indicates only nightmares, seeing white flashes, headaches, and a knot over his eye as a result of the two or three punches from Barnes), the parties do not dispute that Plaintiff was struck in the face several times and was subsequently treated at a hospital. Generally, when the feared attack occurs, courts have held that "the objective prong is

satisfied." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008); *Grieveson*, 538 F.3d at 775. The focus of the inquiry with respect to the August 25, 2011, incident, is whether Defendants had sufficient knowledge of the risk of an attack and whether they failed to take reasonable action to abate it.

Defendants contend that Plaintiff cannot establish deliberate indifference because his expressed fear of an attack was too general. An inmate's vague or nonspecific communications of a threat provides insufficient notice to an officer of a need to protect. *Dale v. Poston*, 548 F.3d 563, 568 (7th Cir. 2008). The inmate must demonstrate that the defendants had "actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997). "Mere negligence or inadvertence" is insufficient, and the inmate must present evidence that defendants knew there was a "strong likelihood rather than a mere possibility" that violence would occur. *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir.2006) (internal quotations and citations omitted).

The summary judgment evidence demonstrates that Plaintiff requested protective custody shortly after he entered the jail. When making the request, however, Plaintiff stated no individual from whom he needed protection, or even a specific group of inmates, such as a particular gang. Rather, he stated simply that he was "in fear of my life." Doc. 37, ¶ 12. He never told Sweeny or Essex that Plaintif feared his attacker Barnes. *Id.* at ¶ 24. At most, he indicated that he feared all general population inmates, yet prior to August 25, 2011, he never indicated that he had been attacked by general population inmates or that there was a threat of an imminent attack. Such a vague possibility of an attack provided inadequate notice of an attack. "[A]s the vagueness of a threat increases, the likelihood of 'actual knowledge of impending harm' decreases." *Dale*, 548 F.3d at 569, quoting *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005); *see also Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002) (informing officers that inmate was "having problems on the block" and wanted to be moved was too vague to put officers on notice of a threat of an attack). The evidence demonstrates that, at most, there was only a mere possibility of an attack. Without expressing a fear of an attack from Barnes or

any of the inmates on the elevator, Plaintiff cannot establish that Sweeny and Essex actually knew of a risk they had to abate. *See Lewis*, 107 F.3d at 553 ("[W]ithout such knowledge, defendants can hardly have been deliberately indifferent to [the inmate]'s safety").

Even if Plaintiff's fear of general population inmates sufficiently put Sweeny and Essex on notice of a possible attack, their actions cannot be considered a conscious disregard of such a risk. Similar to procedures with transporting general population and protective custody inmates on a bus, the three general population inmates entered the elevator before Plaintiff, were handcuffed together, and Officer Sweeny stood between them and Plaintiff. When the elevator doors opened, Plaintiff was instructed to exit first and to walk ahead of the three inmates. Such actions indicate no conscious disregard of Plaintiff's safety but, at most, negligence with the manner the inmates were escorted on and off the elevator. As noted above, however, "[m]ere negligence or inadvertence" is insufficient. *Pinkston*, 440 F.3d at 889. The summary judgment evidence thus demonstrates that Plaintiff cannot establish deliberate indifference by either Essex or Sweeny.

The summary judgment record further demonstrates that Plaintiff cannot establish deliberate indifference with respect to the September 29, 2011, bus incident where he was spat on, verbally harassed, and kicked once. Nor can he establish deliberate indifference with similar bus incidents where he was allegedly spat on and verbally harassed. Enduring such conduct, though unfortunate, does not give rise to a constitutional claim of deliberate indifference. Plaintiff must be able to establish that he faced an objectively serious risk of harm. Verbal harassment is not the type of conduct that gives rise to a constitutional violation. *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000); *Morgan v. Godinez*, No. 13-cv-182-MJR, 2013 WL 1143304, 4 (S.D. Ill. Mar. 19, 2013) (Reagan, J.) ("Verbal harassment and threats do not violate the constitution."). Similarly, spitting "certainly constitutes offensive contact, [but] does not rise to the level of force that is needed to sustain a constitutional claim." *Morgan*, 2013 WL 1143304 at 4. "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)), quoting *Hudson v.*

*McMillian*, 503 U.S. 1, 9–10 (1992). The alleged adverse actions Plaintiff experienced on September 29, 2011, and possibly later bus trips to court were simply too minor to give rise to claims of a constitutional violation.

Having determined that the summary judgment evidence reveals no deliberate indifference with either the August 25, 2011, or the September 29, 2011, incident, the court need not determine what roles, if any, Defendants Dart, Moreci, and Thomas played. The court nonetheless notes that Plaintiff can establish no liability against these Defendants. To the extent Plaintiff sues them in their individual capacities, he must prove that these Defendants actually knew that Plaintiff faced a substantial risk of harm yet disregard that risk. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003), *citing Farmer*, 511 U.S. at 837. None of the supervisory Defendants had knowledge that Plaintiff faced a serious risk of harm. They certainly had no prior knowledge of any risk of an attack before the August 25, 2011, incident, since there is no evidence that Barnes posed a risk of violence to Plaintiff. Nor is there any evidence that they knew of a risk of an attack prior to the September 29, 2011, incident. According to the record, neither Dart nor Moreci were part of the grievance process such that they would have seen Plaintiff's grievance about the August 25, 2011, attack. As to Defendant Thomas, neither he nor Plaintiff recalls ever communicating with each other.

The record further demonstrates no genuine issue of material fact as to any claims against Dart, Moreci, and Thomas in their official capacities. A claim against an officer in his official capacity is actually a claim against the governmental entity that employs him, which in this case is the Cook County Sheriff's Office. *See Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir. 2000). An official capacity claim is premised on an unconstitutional policy or custom, which "can take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority." *Palmer*, 327 F.3d

at 594-95 (internal quotation marks and citation omitted); *see also Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690–91 (1978).

To the extent Plaintiff contends there was an unconstitutional policy or custom of not keeping protective custody and general population inmates separated at all time, the summary judgment evidence demonstrates no deliberate indifference. The parties do not dispute that there was a policy stating that "All protective custody detainees shall be transported separate from general population detainees. Detainees being transported shall be under the direct supervision of escort staff at all times." Doc. 43, Exh. B, copy of Cook County Department of Corrections, Policy No. 1081, Section III.B. Nor do the parties dispute that general population detainees boarded buses first, were seated in the rear and, when exiting, waited until protective custody detainees deboarded before exiting. Similar procedures apparently were followed for riding elevators at a courthouse. There may have been a better procedure, perhaps by placing a greater distance between protective custody and general population inmates. However, jail officials "[are] not ... required to guarantee the detainee's safety. The existence or possibility of other better policies which might have been used does not necessarily mean that the defendant was being deliberately indifferent." *Smith v. Sangamon County Sheriff's Dept.,* 715 F.3d 188, 191 (7th Cir. 2013). The summary judgment evidence provides no indication that Defendants were aware that the procedures of keeping inmates separated on the bus or even in an elevator were so deficient that it posed an unreasonable risk of harm.

## CONCLUSION

For the reasons stated above, the Court grants Defendants' motion for summary judgment. Doc. 35. Judgment is rendered for Defendants. This case is closed.

ENTER: _____
Joan H. Lefkow
United States District Judge

DATE: December 4, 2013